We'll proceed to the last case of the morning, which is United States v. Clark. That's clause number 18-1083, and we will hear from Mr. Hillis. Morning. May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and it's my pleasure to represent Mr. Clark on this case. He raises four issues, but because the fourth one isn't contested, the conditions of supervised release, I'll not address that unless the Court has questions. Instead, I'd like to turn immediately to the collateral estoppel issue. I'll begin with what the Supreme Court said in Ash v. Swenson, 1973. It said, when an issue of ultimate fact is determined, final and valid judgment, determined in a fact and entered into a final and valid judgment, the issue cannot again be litigated by the same parties in a future lawsuit. That's exactly what we have here, because in the Minnesota case, the Minnesota District Court determined the Illinois reckless conduct conviction resulted in no criminal history, which, of course, under Gaul, you begin with a guideline calculation. The criminal history is essential to the guideline calculation. The District Court decided, with the PSR at its disposal, not to impose any criminal history in the case. The final judgment results in Minnesota. Illinois conviction gets no criminal history. My client is sentenced. Everything is in place, considering that we've got two parties that are the same, Mr. Clark. Was the issue litigated in Minnesota? It was necessarily litigated through determination. I mean, was there a disagreement about it? Your Honor, there wasn't, because once the PSR was issued, the parties, of course, had an opportunity to object to the PSR's determination, and it was unobjected to, so it was agreed. It was litigated in that sense. It was not contested. The reason I'm asking, well, we use the term actually litigated in the case law, and the reason I raise this is because of the government's arguments about whether parties have an incentive to dispute such issues in the prior case, and if we extend collateral estoppel or issue preclusion too broadly, we wind up creating incentives that could make it very, very difficult to deal by agreement with minor issues that could have unexpected ramifications later on. Yes, but nevertheless, the components are in place. So that is essentially a policy argument. But nevertheless, we have instances across the board where resolution of something that may not seem important at the time is agreed to by the parties, and then it comes out later that it is a significant issue. That does not detract from the four factors, though, for the collateral estoppel analysis. Can you give us some examples along those lines? Oh, certainly. So armed career criminal or anything with regard to restitution. No, no, no, no. Case law applying principles of collateral estoppel to issues that were resolved by agreement. I can't set any examples off the top of my head, Your Honor, but I can tell you again what the factors are from ASH, and I can't see how they don't apply here because, again, we've got something that's necessarily litigated per gaul, and as a guideline calculation, criminal history is central. Mr. Hillis, I know there's a little bit of a dispute between the parties as to whether issue preclusion was raised in the district court. Right. Okay, and the question I have is, isn't the sentencing transcript pretty clear below that the same 71-month sentence would have been imposed whether or not there's a criminal history point for the reckless conduct?  Conviction? Yes. And doesn't that kind of resolve all this? I don't think so. Why not? Because, as we pointed out in the brief, there's a matter of where somebody is placed for a Bureau of Prisons. There's the matter of the institutional importance of getting these things correct for the guidelines for the Sentencing Commission, but most fundamentally, Judge, if you want to know where do we find actual harm or potential harm in this case, if you were to sweep those things aside, we still have a criminal history category that's going to follow my client through any revocation proceedings. So under 18 U.S.C. 3583E3, if there's a revocation, we're going to look under Chapter 7 for the policy statements. Those are going to look directly back to what the criminal history category is. It is going to affect my client's sentence if he gets revoked, which is a very possible thing for any criminal defendant for all the conditions of supervised release. So that is a substantive right that is impacted by way of future punishment. Okay. I understand that argument. Do you know, has this court ever in effectively employing harmless error along the lines I talked about here, has this court ever considered those kinds of collateral risks? Yes. And if so, where? United States v. Schroeder. I believe that the court citing United States v. Pruden from the Third Circuit, it's not cited in my brief, Your Honor. I'm just trying to answer on the fly. But Chief Judge Wood authored for the court the opinion in Schroeder. It was a non-delegation issue but spoke of the conditions of supervised release that allowed the non-delegation, the impermissible non-delegation, to occur about the sort of harm with the potential of the revocation. I guess I should be more precise. In a kind of context like this where Judge Lee is very clear, I'm going to impose 71 months either way. Right. So let's not get all wrapped up around the one-point issue. Right. As I recall, Schroeder, it was very much a down-the-chain analysis about, okay, you've got now the supervised release condition that says this. Plain error applies. How are you harmed? And the potential for revocation for a condition that's improperly in effect that could lead somebody to be re-imprisoned under 3583E3, that was the analysis, as I'm recalling, Schroeder and Pruden. But on just whether there was an improperly broad supervised release condition. That's right. Not this kind of harmless error analysis. But, Your Honor, if you've got criminal history that is going to follow you through your time under supervised release, and you're now criminal history category 3 versus 4, excuse me, 4 versus 3, for instance, that is going to affect the range of imprisonment under the guidelines. And so you can try to argue to a court in mitigation, but nevertheless the policy statements say look to the PSR in its determination of what your, excuse me, look at your previous criminal history category. That's what follows you for revocations. That is substantial. That affects your rights. If there are no other questions on the collateral estoppel, I would like to move then in my remaining time, talk about issue 3, because I believe that the case should be resolved by way of the criminal history on the issue preclusion as opposed to the applicability of the guideline. I will mention briefly, though, before I get to the third point, as to issue 2, the procedure that is supposed to be used under staples, which relied on the Kemp case from the Ninth Circuit, is that in instances where you are to look and decide what the criminal history is going to be for the alleged conduct, you are not supposed to just look at the summary in the PSR. You are supposed to look at the relevant documents in the underlying case. The district court didn't do that. It didn't look to the documents in the Illinois reckless conduct case. Instead, it relied on the summary from the probation office. I think that also now is in tension with where the Supreme Court has gone on categorical versus modified categorical for a divisible statute and an indivisible statute. Here we have an indivisible statute. So I don't even... Is it your view that under 4A1.2C in the guidelines, we have to apply the categorical method? When it's an indivisible statute, yes. As opposed to paying attention to the actual facts? Yes. Why? Because under the analysis that was set forth in the case law that said about when and under what circumstances you can look at various documents, they are pertaining to, for staples, the pleadings and the information that was available to the district court in the Kemp case and said you should look to those materials. Post-staples, we have this whole series of cases talking about, excuse me, some of them precede and some of them post the Kemp case and the staples case alike. But from the Supreme Court talking about when to use the modified categorical approach versus the categorical approach. Under 4A1.2C? No. But that's why I don't think that those cases can now be read in the way that they have been read because the law has changed. As for the issue about the adequacy of the district court's explanation, the district court gives an adequate explanation for the period of imprisonment. That's fine. But it never gave an adequate explanation for the period of supervised release. Instead of the three years the guidelines said, we got a five-year period of supervised release, which is a 67% increase. There's never an adequate explanation for that increase into the guidelines, and therefore Gall says that's improper. I reserve the balance of my time. Okay. Thank you, Mr. Hillis. Let's see. Mr. Diduania for the government. May it please the Court, Vikash Diduania of the United States. The district court appropriately assigned a criminal history point to the reckless conduct conviction. It shouldn't have been excluded as a local ordinance violation because, in fact, it was not a local ordinance violation. It was a violation of state criminal law, and therefore that exception, which the defendant now argues for the first time in an appeal, does not apply. With respect to harmless error analysis, there's a long line of cases by this court explaining that if it were a district court, explaining that it would have imposed the same sentence regardless of the guidelines calculation, any error in the guidelines calculation was harmless. The defendant's attempt to expand the analysis under Rule 52 is in conflict with how courts have read the substantial rights provision of Rule 52. So in United States v. Atlanta, the Supreme Court explained that the substantial rights language refers to instances where it would have impacted the outcome in the district court proceedings. That's the analysis. And that's the analysis this court has conducted in the harmless error context generally, and more specifically with guidelines calculations. And then with respect to the five years of supervised release, the district court specifically addressed why it was imposing five years of supervised release. It explained its concerns about recidivism. As the court has reviewed the sentencing transcript, the district court repeatedly expressed concerns about recidivism based on both a prior drug trafficking conviction, a violation occurring during the supervised release, and also the nature and circumstances of the offense which raised concerns about recidivism. And the district court explained that it was imposing a lengthier term of supervised release to address those concerns about recidivism. If we reach the collateral estoppel issue, what can you tell us about the Minnesota case and the role that this particular Illinois conviction played in that case? As Your Honor mentioned, the reckless conduct conviction was not litigated in the Minnesota proceeding. It didn't appear to have played much, if any, role. The parties were focused on the mandatory minimum sentenced there of 60 months, which was within the guidelines range that was calculated and would have been within the guidelines range had the court assigned one point to the reckless conduct conviction. So the parties were not focused on it. No one was litigating on that issue. And the judge focused on mandatory minimum. Did the parties agree to recommend the mandatory minimum? They did not, Your Honor. The government recommended the mandatory minimum. The defendant asked for a sentence below the mandatory minimum, recognizing that that was not possible. Okay. Yeah. The defendant asked for 51 months. That's correct, Your Honor. But we had a five-year mandatory minimum. That's exactly correct. And so the judge imposed the mandatory minimum given that no one had asked for something higher than the mandatory minimum. And because the issue was not litigated, as we mentioned, collateral estoppel would not apply. And here, the other elements of collateral estoppel haven't even been met. But the other point, if I could make about that, is as the case is explained, courts have been hesitant to apply collateral estoppel in the criminal sentencing context for a variety of reasons. But that applies especially with force in this context when we're talking about the guidelines calculation because district courts have an independent obligation at the start of each sentencing proceeding to correctly calculate the sentencing guidelines range. And so it would be unwise to require them to forego that obligation and instead rely on an improperly calculated guidelines range from a previous proceeding. And so the doctrine of issue preclusion doesn't apply in any case given the elements. The defendant hasn't met the elements. But even considering more broadly in the criminal sentencing context, it should not apply here. If there are no further... On the question of harmless error, how little do you think a district judge can say and still render a guideline error harmless? For example, we've got some provisions in the guidelines where you may have a 6 or 8 or even 12 level cliff, an offense level cliff. Or it could be, does the person fall under the armed career criminal guideline where you get dramatic effects on the guideline? How much do you think a judge... Well, how little do you think the judge can say that we should say, okay, we'll accept that? The district court judge should give an explanation for why he or she would have imposed the same sentence. And here the district court judge gave a significant explanation. I'm not sure exactly where the line is, but this case was way over the line. The district court judge explained, even if I'd agreed with the defendant that a criminal history point should not be assigned, I would impose the same sentence. One, the prior sentence, 60 months, as I said, was insufficient to deter him from criminal activity. And two, in light of the seriousness and extensiveness and callousness with regard to Mr. Clark's criminal activity that constitutes the offense. And that was preceded by a lengthy explanation of those precise factors. In this case, the district court even said it considered imposing a higher sentence, a sentence higher than 71 months, but ultimately decided to impose 71 months, which was at the top of the guidelines range that it had calculated, and certainly above the guidelines range that would have been calculated under the defendant's approach. And so the district court here conducted a lengthy... and why it felt that sentence was necessary under 3553A, regardless of the guidelines ranges. If there are no further questions, the government asks that the conviction and sentence be affirmed. Thank you. Thank you, counsel. Mr. Hillis, rebuttal? The government's correct in the case that it cites for harmless error. On the appellate court level, I would encourage this court to go back and read if it hasn't already in its memory recalled the language out of Rosales-Morales. Rosales-Morales was the Supreme Court case, and it talked about when things are not harmless. Any error in the guidelines that can affect the sentence is not harmless. We've got an anchoring effect, Your Honor. I know I was aware of this. He's written about this, Judge Hamilton. The anchoring effect is real. It mitigates in favor of finding that there's an error in this case. And this is to say nothing of what we mentioned by way of the criminal history calculation. If the government is right, and the judge gave a 3553A explanation about the length of sentence, he never still accounted for the error and the defect as it goes to criminal history that's going to follow my client and affect his substantial rights with potential revocations in the future. Also, if I may, just for a moment, the reliance interest that an individual defendant has in a case when their criminal convictions have been previously adjudicated, criminal history assessed, and so forth, they find they're getting no criminal history. Imagine somebody who finds themselves now in a later proceeding, and they are an armed career criminal because now we've found this case and criminal history should apply. We think that you should get points you didn't get before. And now you're in a whole different category. You're in a whole different sentencing range. These are things that are real. And the government has, for all it wants to say that it wasn't important to it to litigate this, has an interest in making sure the process is correct. Are you saying that folks who are about to commit a crime are considering how their criminal history has figured in the past to try to gauge the risks? If I would argue against it. Our empirical evidence is thin on that. I think that the case law that comes out of this court that refers to general deterrence and so forth is suspect. But if I am going to group one thing in one camp, I'm going to throw my client's interests where they best are served. Okay. And I do need to ask you, Mr. Hillis, whether you think the collateral estoppel rule you're talking about ought to be symmetrical. That is, so that a defendant who has once lost an issue on a guideline issue, particularly criminal history, is stuck with that.  Sorry? It has to be symmetrical. Even if, for example, I guess I'm trying to do it hypothetical on the fly, but it in essence would be a situation in which everybody agrees that it's appropriate to give this guy the mandatory minimum and we really aren't going to worry very much about the guideline calculations. And so the PSR may give him an extra point. Defendant says, I don't want to annoy the judge. I don't want to fight about it. Right? We have a remedy. What's that? Over-representation. We argue under the guidelines. We argue under 3553A. We're not locked in. We've got an avenue for both sides. For both sides. I wouldn't think it's fair for me to come up and ask for a rule that, heads I win, tails you lose. Criminal history needs to be applied in a way that is procedurally correct for both parties. And we've got our avenue when we argue over-representation. Okay. Thank you. Thank you to both counsel. Thank you very much. And the case is taken under advisement.